J. C. JULIENNE v. MAYOR AND ALDERMEN OF THE CITY OF JACKSON.

1. MUNICIPAL CORPORATION. *Police power. Destruction of dogs running at large.*

A municipality may, in the exercise of its police power conferred by charter, provide by ordinance that unmuzzled dogs running at large shall be killed. Such ordinance violates no constitutional right of the owner, although his property should be destroyed without notice.

2. SAME. *Meaning of "running at large." Case.*

A dog found in the street unmuzzled, and unaccompanied by its owner or master, will be deemed to be "running at large" within the meaning of such ordinance, and may be lawfully killed by a policeman, although it had escaped confinement and the owner was little more than a square away in pursuit.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

J. C. Julienne brought this action before a justice of the peace to recover of the city of Jackson for killing a dog, which was shot, as he contends, unlawfully by the chief of

police of said city. The charter of the city conferred the power to provide for the confinement and destruction of dogs when deemed necessary. An ordinance of the city provided that between certain dates mentioned all dogs running at large without a muzzle and tag should be destroyed by any policeman of said city.

The plaintiff's dog was shot by the city marshal, usually called chief of police, under the following circumstances, which are substantially taken from an agreed statement of facts upon which the case was tried in the circuit court: The plaintiff resided near the business portion of the city, and the dog was kept upon his premises securely tied to prevent him from running on the streets. On a certain morning, during the time when the ordinance stated was in force, the dog succeeded in breaking his collar, and, without the knowledge of any of the family or servants of plaintiff, leaped over the fence and wandered down the street, and on one of the business streets of the city was discovered by the chief of police and shot. The dog was without muzzle or tag, and none of the circumstances of the escape were known to the officer. About ten minutes after the dog left the premises, the wife of plaintiff discovered that the dog had gone, and, learning the direction he had taken, hurried in pursuit, intending to return him to the yard. When the dog was shot she was little more than a square, about one hundred yards, away. A number of persons witnessed the killing, and several by-standers asked the officer not to shoot the dog, and one of them proffered to take charge of it and restore it to the owner. It is admitted, however, that the evidence is conflicting as to whether this offer was heard or could be heard by the officer. The testimony of the officer was that he did not hear it. It is further admitted that in killing the dog the officer acted under a sense of his official duty. The dog was highly bred, and thoroughly trained for the field, and belonged to a class that had a market value, and was entirely harmless.

Plaintiff had judgment in the justice's court, but in the circuit court the cause was submitted to the court without a jury, which, on the facts above stated, rendered judgment for the defendant.

*Frank Johnston*, for appellant.

1. When killed, the dog was not running at large within the meaning of the ordinance. Every unusual and accidental escape of a dog without the fault of the owner cannot constitute a running at large, especially when the dog is closely pursued by the owner. The same ordinance which enjoins the destruction of the animal provides a penalty against the owner for permitting it to run at large. The purpose of the ordinance was to prevent dogs indiscriminately using the streets. It applies to dogs that are estray. See 63 Ill., 88; 50 Vt., 130; 52 Cal., 653. In view of the offer of the by-stander to take charge of the dog, the killing was unnecessary, arbitrary and wanton.

2. The city did not have, and could not be given, the arbitrary power of destroying animals without notice to the owner. The charter should be construed and limited to reasonable remedies. Impounding is a complete and effectual remedy in cases like this.

3. Dogs are property. They are daily bought and sold in the market; and, although regulations as to the control of dogs come within the police power, they cannot be destroyed without actual or constructive notice to their owner. Under the police power a dog cannot be killed unless it is necessary for the safety of the public. It is admitted in this case that the dog was harmless.

*J. B. Harris*, for appellee.

The ordinance is valid and constitutional. Teideman on Police Power, 907 *et seq.;* 100 Mass., 136; 13 Tex., 58; 3 Tex., 489; Cooley, Con. Lim., 741; 18 Pick., 363; 42 N. H., 373; 16 Wis., 317; 1 Metc. (Mass.), 555; 10 *Ib.*, 382; 4 Black. Com., 236.

In this case it is not pretended that the owner had any sort of control over the dog. The effort to regain the dog was unknown to the officer. Whether or not the officer heard the proffer by the by-stander to take charge of the dog cannot affect the question. 1 Metc., 555.

The duty of the officer was to destroy the dog. If he were permitted to turn over dogs to any certain by-stander, this would result in endless confusion and provoke favoritism on the part of officers. Such an administration of law could not be tolerated. In the above decisions the killing of dogs under police regulations was sustained under regulations more stringent than this ordinance, and was held to be violative of no constitutional rights.

Cooper, J., delivered the opinion of the court.

Though the plaintiff's dog was not permitted to be at large knowingly, but escaped from his close, and was soon thereafter followed by the plaintiff's wife for the purpose of returning him to confinement, he was nevertheless "running at large" within the meaning of the ordinance of the city, and was lawfully killed by the city marshal.

It may be conceded that the plaintiff had a property right in the animal, and might have recovered his value as against one unlawfully killing him. But of all property, dogs are more peculiarly the subjects of police regulations than any other class. They are very generally kept and considered of value because of their tendency to revert to their savage state, and to attack as an enemy any stranger who may approach them; and it is because of the danger to the public arising from these instincts that they are so often and so generally subjected to police regulations, especially in cities and towns.

It is held with great unanimity by the courts that regulations of the most stringent character, and the most summary proceedings for the destruction of these animals kept contrary to such regulations, are entirely within legislative power, and free from constitutional objection, though the property

of the owner is destroyed without notice or hearing in the execution of the law.

In Massachusetts it has been held that a dog, not licensed and collared according to the provisions of law, may be shot within the owner's close by the officer. *Blair* v. *Forehand*, 100 Mass., 136.

So in New Hampshire, under a statute providing that " no person shall be liable by law for killing any dog which shall be found not having around his neck a collar of brass, tin, or leather, with the name of the owner or owners engraved thereon," it was held that a private person might lawfully kill a dog having on a collar on which was engraved the initials of the owner's name, even though he knew who was the owner, the court saying: "Actual notice of the owner-ship of the dog will not supersede the necessity of a compli-ance with the statute. Its provisions are direct and positive, and the consequence of a neglect of the statutory require-ments are explicitly stated."

Replying also to the argument that the act conflicted with the constitution in that it was a taking of private property for public uses, or deprived the owners of their property in dogs, the court said the act had no such effect, but "merely regulated the use and keeping of such property in a manner that seemed to the legislature reasonable and expedient. It is a mere police regulation, such as we think the legislature might constitutionally establish." *Morey* v. *Brown*, 42 N. H., 373. See also Tiedeman on Police Power, § 141 *et seq.;* Cooley on Const., Lim., p. 741.

*The judgment is affirmed.*