(Decided June 23rd, 1897).

---

# THE MAYOR AND CITY COUNCIL OF HAGERSTOWN ET AL *vs.* FRANK WITMER ET AL.

*Dogs—Validity of Municipal Ordinance Providing for the Killing of Dogs Running at Large—Police Power—Constitutional Law.*

Laws designed to prevent dogs from running at large in cities are within the police power of the State.

The owner of a dog has only a qualified property therein.

Where a municipal corporation is authorized by charter to abate nuisances and to provide for the safety and health of the community, an ordinance by it providing that dogs running at large shall be seized and impounded, and if not redeemed within twenty four hours shall be killed, after notice to the owners if known, is within the charter powers and is not unreasonable, nor is it in violation of the Constitution.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.), granting an injunction.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

*A. C. Strite*, for the appellant.

*Wm. J. Witzenbacher* (with whom was *J. Marbourg Keedy* on the brief), for the appellees.

The charter of Hagerstown in the general grant of powers, section 171 of Article 22 of Code of Public General Laws, or elsewhere, does not in any particular contain a single provision authorizing the seizure, impounding or destruction of dogs or other animals.    Without such express power, it cannot be held to exist.    *Dillon's Mun. Cor.* sec. 150, 348 ; 1 *Beach, Pub. Corp.*, sec. 527.    Dogs are property.    *Ten Hope* v. *Walker*, 96 Mich. 236 ; *Heiligman* v. *Rose*, 81 Tex. 222 ; *Harrington* v. *Miles*, 11 Kan. 480 ; *Washington* v. *Meigs*, 1 McArthur, 53 ; *Jenkins* v. *Ballantyne*, 30 Pac. Rep. 760.

But the charter of Hagerstown confers the power to "license and tax dogs." Sec. 171.    It may be pretended that a power to forfeit and kill dogs may exist under the " general welfare" clause of the charter.    However, if a special power is given by the Legislature, and a general power should also exist, the special power controls and limits the general power, and the latter does not extend the former.    *Dillon Mun. Corp.* sec. 315, 316, 317, 89 ; *Heusing* v. *Rock Island*, 128 Ills. 465 ; *Price* v. *Deford*, 18 Md. 489 ; *State* v. *Morristown*, 33 N. J. L. 61 ; *Brice, Ultra Vires* (3rd ed. 1893), 130.    The charter of Hagerstown conferring the power to license and tax, excludes the conception of impounding, forfeiting and killing, unless, perhaps, in aid and pursuance of an attempt to "license and tax" as in Baltimore and other cities.    *Balto. City Code*, (1879), Art. 33, sec. 19.    The only mode of enforcing ordinances pointed out by charter is by fines not exceeding

fifty dollars, sec. 171, at end.    And authority is also given to impose fines for maintaining or causing nuisance, sec. 171 at beginning.    Now, in all cases of enforcing ordinances, the mode pointed out by the charter prevails.    1 *Dillon Mun. Corp.* sec. 339 ; 1 *Beach Pub. Corp.* sec. 523. A forfeiture is penal and not civil in its nature.    *Dillon Mun. Corp.* sec. 150.    The power "to license and tax," does not confer the power to destroy.    *Radecke's case*, 49 Md. 217 ; *State* v. *Mott*, 61 Md. 308.    The municipalty of Hagerstown has no power to define a nuisance, and designate any set condition of affairs as a nuisance.    *State* v. *Mott*, 61 Md. 308.

There exists no evidence that a dog, since the earliest glimmerings of human history, the companion and friend of man, is *per se* intrinsically and inevitably a nuisance, as contemplated in *Bœhm* v. *Baltimore*, 61 Md. 263, especially when so declared within the narrow limits described in the ninth section of the ordinance.    Where exercise of power may result in divestiture and transfer of property, it must be clearly given and strictly pursued.    *St. Mary's School* v. *Brown*, 45 Md. 333 ; *State* v. *Rowe*, 72 Md. 550 ; *Anderson* v. *Wellington*, 40 Kan. 173.

There does not exist the slightest express authority for the seizing and killing of dogs on behalf of the town of Hagerstown, nor can a dog beyond the immediate physical control of some person be deemed to be a nuisance *per se*, whereupon to suffer execution.    For instance, a pug dog, or rat terrier, asleep on his master's door step is subject to seizure and destruction.    How can such a dog be a nuisance ?    No such ordinance has ever been passed by any municipality.    In Baltimore City, only dogs unlicensed are subject to seizure when at large.    What can be meant by "immediate physical control," in the 9th section, defining " at large " and limiting its meaning in the first section of the ordinance ? Such construction is at variance with all judicial interpretation.    It must mean that by the imposition of the hand, or the foot, or material connection with the body of a person,

the movements of the dog must be controlled, and excludes
the idea of controlling by voice or gesture.   Such is not
the meaning of " at large " in *Benson* v. *Tice*, 45 N. E. Rep.
612, and affixes unreasonable conditions to the use and en-
joyment of property in dogs.

Section seven, commonly termed "the howling dog"
ordinance, as distinguished from section one, or "the
wandering dog" provision, is invalid as an unreasonable
exercise of power within the terms of *Radecke's case*, 49
Md. 217.   It is also void on account of the cumulative
fines provided for, as set forth in 1 *Beach on Pub. Corp.*, sec.
529; *Dillon, Mun. Corp.*, sec. 340.   The charter, sec. 171,
limits fines to fifty dollars.   In addition this provision is also
obnoxious to the reasoning herein applied to the first sec-
tion, as it indirectly enforces a forfeiture of the property in
question.   Of course, if the enforcing part of the ordinance is
*ultra vires*, or void, the ordinance is void.   *Commonwealth*
v. *Kelleher*, 12 Allen, 480.   As to jurisdiction of Court, see
*Groshon's case*, 30 Md. 446; *Page's case*, 34 Md. 558;
*Holland's case*, 11 Md. 186; *Deem's case*, 80 Md. 170;
*Radecke's case*, 49 Md. 217.

In *Cochrane* v. *Frostburg*, 81 Md. 63, the Court is careful
to distinguish between the power to pass regulations rela-
tive to animals running at large, and the power to impound
and forfeit the same.   That case can be further distinguished
from the present one in the fact that in the charter of
Hagerstown dogs are specially mentioned, and taxation and
license provided for, thus clearly segregating them from the
" more brutish beasts " forming the subject of the above
decision.   The present case can likewise be distinguished
from *Deem's case*, 80 Md. 170, where the power to " regu-
late, etc.," is conferred and made operative upon food pro-
ducts.   Of course, unwholesome food, like diseased cloth-
ing, is a common nuisance, and it would not only be
ridiculous but unlawful for the municipality to " license and
tax " them, as provided for dogs in Hagerstown's charter.
It is not only the right, but the duty of the municipality to

stamp out a conceded nuisance; but not only is a dog not
a nuisance, but by conferring the right to license and tax
them, the Legislature has manifested an intent to consider
him as not a nuisance.    Under the reasoning in *Cochrane's
case*, 81 Md., wherein it has been determined that a citizen
has a right to have the municipality exercise powers con-
ferred upon it when the same may be necessary and proper
for his protection, have not the petitioners the right to have
their dogs made the subject of " taxation and license," and
thus protected in the enjoyment of their property from
molestation by the authorities or private parties ?    There is
no ordinance of Hagerstown providing for the licensing and
taxing of dogs.    The charter providing for such license and
tax presumes that in the event of such action dogs shall
have the privilege of the streets.    A dog, kept in a cage or
confined in a yard, could not in any event be subject to a
license or a tax.    *Washington* v. *Meigs*, 1 McArthur, 53.
Conversely, the imposition of a license or tax must be based
upon the use of public thoroughfares.    As the Legislature,
in its delegation of authority, must be considered to have
exhausted itself in committing to Hagerstown the right to
license and tax dogs, these animals must have the right of
enjoyment of the highway until it be restricted by action to
license and tax.    In similar manner, no dog in the State
was required to show a special permit to live, before enact-
ment of the statute.    *Code P. G. L.*, Art. 81, sec. 159,
163, wherefrom Washington County is exempt.    *Art. 22,
Code P. L. L.*, sec. 121.    Examine section 171 of charter
and observe how the power of the municipality over dogs
is discriminated from the power conferred on other subjects,
to-wit:  " Suppress vagrancy,"  " prohibit and restrain bawdy
houses,"  " regulate  and  restrain  theatrical  amusements,"
" regulate, license and tax saloons,"  " regulate, license and
tax carriages," etc.  Clearly, if the Legislature had intended
to confer the power to " suppress," " prohibit," " restrain "
and " regulate " dogs, they would have said so.   By the
apparent use of the word " license," it must be taken as

synonymous with "tax." The power "to define nuisance" is likewise wanting, and the last pretence of authority for this extraordinary and unprecedented measure is taken away. It has been a favorite exercise of the police power of the State to impose a license upon dogs, to operate as a check upon the keeping of these animals. *Mitchell* v. *Williams*, 27 Ind. 62; *Carter* v. *Dow*, 16 Wis. 298; *Tenney* v. *Lenz*, 16 Wis. 566; *State* v. *Cornwall*, 27 Ind. 62; *Holts* v. *Rose*, S. C. Ohio, 8 Ohio L. J. 605; *State* v. *Doe*, 41 Am. Dec. 601. The Legislature, having elected this mode of disposition of the matter, must be taken to have excluded all other methods, except as such may be incidental to carrying out the purposes of this power.

BOYD, J., delivered the opinion of the Court.

The appellees filed a bill against the appellants to restrain and enjoin them "from doing or performing any act or acts contemplated to be by them done or performed" by an ordinance entitled "An ordinance regulating the running at large, catching, impounding and killing dogs within the corporate limits of Hagerstown." The object of the proceeding is to test the validity of the ordinance, and, therefore, we need not stop to discuss any technical objections that might be urged to the form of the bill or other pleadings, especially as the only point suggested has been remedied by an agreement filed in this Court to correct an omission from the record.

The ordinance, after enacting that dogs shall not be permitted to run at large within the corporate limits of Hagerstown, provides for the appointment of not more than three persons to "seize and kill, subject to the subsequent provisions of this ordinance, all dogs running at large within the corporate limits of the city of Hagerstown. All dogs so seized by them shall be detained in a suitable place to be provided by him or them for a period of twenty-four hours. They shall notify every owner of any dog who has a collar upon his dog's neck with the owner's name engraven

thereon of such seizure that the same may be ransomed upon the payment of the fees hereinafter specified." It is further enacted by section 3 " that any owner of any dog seized under the provisions of this ordinance may redeem the same upon the payment to the person so seizing and impounding said dog the sum of one dollar. All dogs not redeemed shall be killed as hereinafter required," and by section 5, " that it shall be the duty of every man appointed to seize dogs under the provisions of this ordinance to kill all dogs not ransomed at 10 A. M. of the morning of the day after they shall have been detained twenty-four hours, in the most humane manner possible."

The charter of Hagerstown contains no express provision prohibiting dogs from running at large. The only reference made to them is a power " to levy a tax and impose a license on dogs." It does, however, vest the Mayor and Council with power " to pass all ordinances necessary for the good government of the town ; to prevent, remove and abate all nuisances or obstructions in or upon the streets," etc. And after enumerating the above and other powers, section 121 of Art. 22 of the Local Code, which includes this charter, provides that " for the purpose of carrying out the foregoing powers, and for the preservation of the cleanliness, health, peace and good order of the community, and for the protection of the lives and property of the citizens, and to suppress, abate or discontinue, or cause to be suppressed, abated or discontinued, all nuisances within the corporate and sanitary limits of said town—they may pass all ordinances or by-laws from time to time necessary. " To insure the observance of such ordinance it authorizes the imposition of fines and imprisonment in default of the payment of fines imposed.

If dogs, by running at large, had become nuisances or offended any of the other provisions of the charter quoted above, it would seem clear that the Mayor and Council could adopt reasonable measures to abate the nuisance or remedy the evil, although there is no express provision in

the charter prohibiting them from running at large.  We held in *Cochrane* v. *Frostburg*, 81 Md. 54, that the Mayor and City Council of Frostburg had power to prevent cattle from running at large under the general authority to pass ordinances to remove nuisances from the streets, and to ordain and enforce all ordinances, rules and regulations necessary for the peace, good order, health, and safety of the town, and of the people and property therein.  That being so, with reference to such animals as cows, it would seem to be equally clear that, under such powers as the Mayor and Council of Hagerstown have, dogs can be prohibited from running at large on the streets and alleys of the city.

It was said by the learned Judge who decided the case below that "I am not to be understood as deciding that the municipal authorities have not the power to provide for the impounding of all dogs or other animals running at large upon the streets ; for the killing of such as have no owners, and for the removal and suppression of those having owners from the streets and highways of the town," but he was of the opinion that the órdinance was void because it did not provide for notice to the owners of the dogs taken under its provisions.  It seems to us that when it is determined, as we do, that the power was vested in the Mayor and Council to prevent dogs from running at large and to enforce it by impounding them, the case is practically determined in favor of the city.

It is true that dogs are now generally recognized as property.  At common law civil actions could always be maintained for their recovery, although they were not regarded as the subjects of larceny.  But they are of a qualified kind of property and such as is peculiarly the subject of police regulations.  They have never ranked with such domestic animals as horses, cattle and sheep, in which the owner has an unqualified and complete property.  Various reasons have been assigned for the distinction, among which are that dogs are not used for food, husbandry, or as beasts of bur-

den, but are generally used either for the mere whim or pleasure of the owner or for such purposes as are calculated to arouse their natural ferocity to some extent, such as hunting, protection, etc.   But probably the most potent reason for subjecting them to more control than other domestic animals is the fact that they are so subject to hydrophobia, which is so readily communicated not only to other animals, but to human beings, when bitten by a dog afflicted with that most terrible disease.   Fortunately, cases are rare as compared with the number of dogs that are to be found in most places, but the damage that may be done by one mad dog is fearful to contemplate.   Conceding then that the appellant corporation has the power to prohibit dogs from running at large, and knowing that the law does make a distinction between them and other domestic animals, Courts cannot say as a question of law that an ordinance of this character is wholly unreasonable and void, as we would have to do to set it aside.   We cannot assume that it may not be reasonably necessary to prohibit dogs from running at large in a city the size of Hagerstown, nor can we say that can be accomplished, without some such provisions as those included in this ordinance.   There are various kinds of dogs ; some are very valuable, others utterly worthless ; some whose owners might readily come to their relief if seized for running at large ; while there are others that either have no owners, or if they have, would not be acknowledged by them, if a fine might be the result of such recognition.   In the case of *Sentell* v. *N. O. & C. R. R. Co.*, decided by the Supreme Court of the United States on April 26th, 1897 (166 U. S. 698), the Court said it was practically impossible by statute to distinguish between valuable and worthless dogs, and " acting upon the principle that there is but a qualified property in them, and that, while private interests require that the valuable one shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the

will of the Legislature, and properly falling within the police power of the several States." Again it was said that legislation on the subject "is based upon the theory that the owner of a really valuable dog will feel sufficient interest in him to comply with any reasonable regulation designed to distinguish him from the common herd." To show how far the Courts of other States have sustained laws of this character we will briefly refer to some of the cases. In *Jenkins* v. *Ballantyne*, 8 Utah, 245, it was held that an ordinance making a dog liable to be killed by any person unless registered and collared as provided by the ordinance, is not in violation of the constitutional provision against depriving a person of property without due process of law, but is a valid police regulation. In *Nehr* v. *State*, 35 Neb. 638, a statute was declared valid which provided that if a dog be found running at large without a good and sufficient collar, with a metallic plate on which the name of the owner is plainly inscribed, no action could be maintained for killing him. In *Blair* v. *Forehand*, 100 Mass. 136, it was decided that authority to regulate the keeping of dogs, under the penalty of having them summarily destroyed, without previous adjudication, is within the police power vested in the Legislature by the Constitution of the commonwealth. In *Morey* v. *Brown*, 42 N. H. 373, a statute providing that dogs may be summarily killed, if found uncollared, etc., was held to be constitutional. In *Julienne* v. *Mayor, etc., of Jackson*, 69 Miss. 34, it was held that a municipal corporation may in the exercise of the police power provide by ordinance that unmuzzled dogs running at large shall be killed ; that such ordinance did not violate the constitutional right of the owner, although his property is destroyed without notice. In *State* v. *City of Topeka*, 36 Kan. 76, it was decided that statutes and ordinances, regulating, restricting or prohibiting dogs from running at large in cities and authorizing the summary killing of those so running at large, were constitutional. In the case of *Sentell* v. *N. O. & C. R. R. Co.*, *supra*, many of the cases we have cited were

referred to and the principles announced by them fully sustained.  Among other reasons for such legislation that Court said : " Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals.  Others, too small to attack these animals, are simply vicious, noisy and pestilent.  As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the liability upon the owner, who, moreover, is likely to be pecuniary irresponsible.  In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance.  Such legislation is clearly within the police power of the State.  It ordinarily takes the form of a license tax, and the identification of a dog by a collar and tag, upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon. "  In *Hubbard* v. *Preston* (90 Mich. 221), as reported in 15 L. R. A. 249, there is an excellent note on the subject where many authorities are collected.  The cases are practically unanimous in holding that laws providing for the summary destruction of dogs at large contrary to statutes or ordinances are constitutional and within the police power of the State.

The ordinance before us requires notice of seizure to be given to the owner of any dog upon which there is a collar, with the owner's name engraven thereon, so it can be ransomed by the payment of the sum of one dollar.  The same protection against the destruction of dogs is thus given owners as is done in cases above cited, where collars were required to be worn as evidence of the payment of the license fees.  Section 3 provides that *any owner of any dog* seized may redeem the same upon the payment to the person so seizing and impounding said dog the sum of one dollar.  A reasonable construction of that section would require that when the owner is known he at least be notified

of the seizure of his dog.    If a dog be of any value to his owner, its absence for twenty-four hours, or more, will most likely be observed by himself, or some member of his family, and he can inquire at the pound for it.    The worst that is likely to happen in such cases will be the payment of the dollar as a ransom fee.    The Mayor and Council can forbid dogs from running at large and impose heavier penalties than that fee for the violation of the law, or they can, under the express provisions of their charter, require licenses to be taken out and, if necessary or proper for the enforcement of such requirement, direct that unlicensed dogs be killed, and that, too, without notice to the owners. But while this is true, an ordinance embracing such drastic features should be very cautiously enforced.    As many of the provisions of the one before us are, to say the least, severe, it should be construed liberally in favor of the owners of dogs if any cases arise under it, and it ought not to be extended beyond what is absolutely required by its terms.    But under the authorities we cannot say that it is unconstitutional and cannot hold it to be so unreasonable in its terms as to justify us in declaring it void.    It may not be a wise law and may possibly work hardship on some owners of dogs, but if that be so it can be remedied by the people themselves, as the Mayor and Council are only their representatives.    It is not subject to our control, certainly not as the case now presented to us.    So far as we are informed by the record, nothing has been attempted to be done under it, yet we are asked to declare the whole ordinance null and void on its face.    This we cannot do for the reasons we have given.    Being of the opinion that the Mayor and Council had the power to pass an ordinance on this subject and that the one before us is not unconstitutional or in conflict with the charter or so plainly unreasonable as to justify us in declaring it void, the decree will be reversed and the bill dismissed.

*Decree reversed and bill dismissed*
*with costs to the appellants.*

(Decided June 23rd, 1897).