## Shadoan, et al. v. Barnett, et al.

(Decided December 17, 1926.)

## Appeal from Pulaski Circuit Court.

1. Constitutional Law—Parties Unaffected by Act Rolating to License Fees on Dogs could Not Question Constitutionality (Acts 1906, c. 10; Acts 1918, c. 112, as Amended by Acts 1920, c. 157).—Where pleading did not show that plaintiffs were owners of dogs or that their rights as such owners were threatened by enforcement of Acts 1906, c. 10, and Acts 1918, c. 112, as amended by Acts 1920, c. 157, relating to license fees on dogs, they could not question constitutionality of statute.

2. Animals—Dog License Fees Held Not Excessive (Acts 1906, c. 10; Acts 1918, c. 112, as Amended by Acts 1920, c. 157).—Dog license fees, prescribed under police regulations of Acts 1906, c. 10, and Acts 1918, c. 112, as amended by Acts 1920, c. 157, are not out of proportion to injuries intended to be repaired, since it is common knowledge that in many counties damage done by dogs to stock exceeds net amount of total license fees collected.

3. Animals—Legislature Under Police Power May Provide for Licensing Dogs (Acts 1906, c. 10; Acts 1918, c. 112, Amended by Acts 1920, c. 157).—Since dog is recognized by law as only qualified property, legislature had power, under police power, to prescribe regulations for his continued existence, under Acts 1906, c. 10, and Acts 1918, c. 112, amended by Acts 1920, c. 157, relating to license fees.

G. W. SHADOAN for appellants.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

The appellants and plaintiffs below, five in number, styling themselves as residents and citizens of Pulaski county and conceiving that the unrepealed portions of chapter 10, page 25, Acts 1906, and chapter 112, Acts 1918, as amended by chapter 157 Acts 1920, all composing our present statutory law commonly known as the "Dog Law" were each and all unconstitutional and invalid, brought this action on behalf of themselves and other citizens similarly situated against the tax commissioner and other officers possessing imposed duties in the enforcement of that law, to enjoin them from performing any

such duties, including the listing of dogs for taxation and the collection of taxes thereon. Five specific reasons were set out in the petition in support of the contention that the entire law was unconstitutional, and multitudinous are the reasons argued in brief in support of those five stated in the petition. The named defendants entered their appearance by filing answer, in which they agreed with plaintiffs and joined in the prayer to have the law declared unconstitutional; but before submission or judgment the Commissioner of Agriculture for the Commonwealth, pursuant to the rights and duties imposed on him by section 32 of the 1918 act, filed his intervening pleading and asked to be made a party defendant, which was done, and on his defense the court finally adjudged the statutes to be constitutional, and dismissed the petition, to reverse which plaintiffs prosecute this appeal.

At the outset it may be stated that the judgment was proper and should be affirmed without any reference to or consideration of any of the alleged constitutional reasons for declaring the law unconstitutional, upon the ground that plaintiffs nowhere in their petition or any pleading filed by them alleged that they were the owners of any dog or, if so, that their rights as such owners were about to be invaded by any act threatened or otherwise on the part of defendants in the enforcement of the statutes. It has long been a settled rule with this and other courts that no one may question the validity of a statute, unless he was already or was about to be injuriously affected thereby. City of Newport v. Merkel Brothers, 156 Ky. 580, 161 S. W. 549; Commonwealth v. Goldburg, 167 Ky. 96, 180 S. W. 68; Gordon v. Tracy, 194 Ky. 166, 238 S. W. 395; Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632, and R. C. L., pages 89-90, paragraphs 87-88. Since, therefore, plaintiffs do not show themselves to have any direct interest in the question, they seek to present, or that the enforcement of the law would be an infringement on their rights, or that they belonged to a class of persons who would be prejudiced by such enforcement, they have no standing in court to demand or require its decision of the academic question or questions submitted by their action; and their assumed public-spirited or patriotic purpose in volunteering their names as litigants to rid the statutory law of the Commonwealth of unconstitutional and forbidden legislation without a further show-

ing that they themselves and the similarly situated persons for whom they assume to sue, are about to be prejudiced on account of the existence of the objectionable statute, while commendable is not itself sufficient to uphold the action, and, we repeat, that for such failure alone the judgment was proper. However, we have concluded to briefly and in a general way consider the merits of the questions sought to be raised, but not with as much detail as would have been done if plaintiffs had manifested their right to contest them by proper averments in their petition.

The great majority if not all of the alleged objections to the law are bottomed upon the theory that a dog is inherently property, and, as a consequence, certain provisions of the statute authorizing the killing of dogs under specified circumstances and the provisions requiring a flat taxation of a fixed amount on all dogs of the same class regardless of the valuation of the dog, because of its age, breed and training, violates certain constitutional provisions, among which are: That "Absolute and arbitrary possession over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority," and that taxes shall be equal on all property subject to taxation. Those two illustrations serve to indicate the error in the theory of the petition, which, we repeat, assumes that a dog is unqualifiedly property upon an equal dignity and with the same rights of protection as other recognized species of property. The fundamental error being that, whatever may have been his status at common law, courts have long since come to the conclusion that "on account of their liability to break through all discipline and act according to their original savage nature, and because all are more or less subject to attacks of hydrophobic madness, the law has properly considered them as in a class by themselves, as is evidenced by the fact, which will sufficiently appear further on in this article, that they have always been made the subject of special and peculiar regulations" 1 R. C. L. 11-12, para. 56.

Mr. Freeman, in his annotation to the case of Hamby v. Samson, 105 Ia. 112, and reported in 67 Am. St. Rep. 285, enters into a lengthy and learned discussion of the subject of "property in dogs," in which he cites and refers to a great number of cases, both federal and state, and on page 288 of the latter publication he says: "At

common law, while property rights in dogs were recognized, they were considered of a base, qualified and incomplete sort.  .  .  .  But the correct statement of the common law rule is, that dogs were considered to be property of an inferior sort, and for some purposes only entitled to less regard and protection than property in other animals.'' On page 298 the annotator says: ''That property in dogs may be subject to regulation by the state in the exercise of its police power cannot be questioned, but as to the course which such regulation may properly take, and as to its general effects, authorities are not in entire agreement, though it should be said, not in serious disagreement.  Such regulation usually runs in the direction of imposing license taxes upon the keeping of dogs, and it is well settled that the summary destruction of dogs may be authorized when such regulations are not complied with: Blair v. Forehand, 100 Mass. 136, 1 Am. Rep. 94; 97 Am. Dec. 82. The exercise of the police power is distinguishable from the exercise of the power of taxation in this connection, and the imposition of license taxes upon the owners of dogs may be sustained under the former, though under the latter they might be invalid because of inequality or lack of uniformity: Sentell v. New Orleans, etc., R. R. Co., 166 U. S. 698; Mitchell v. Williams, 27 Ind. 62; State v. Cornwell, 27 Ind. 120; State v. Topeka, 36 Kan. 76, 59 Am. Rep. 529; Carthage v. Rhodes, 101 Mo. 175; Holst v. Roe, 39 Ohio St. 340, 48 Am. Rep. 459; Van Horn v. People, 46 Mich. 183, 41 Am. Rep. 159; Cole v. Hall, 103 Ill. 30; Tenney v. Lenz, 16 Wis. 566; Carter v. Dow, 16 Wis. 299.  Such regulations may be free from constitutional objection, though the property of the owner is destroyed without notice or hearing in the execution of the law; Julienne v. Jackson, 69 Miss. 34, 30 Am. St. Rep. 526; Hagerstown v. Witmer, 86 Md. 293; Morey v. Brown, 42 N. H. 373; Mowery v. Salisbury, 82 N. C. 175.  In lieu of a license tax statutes or ordinances are often passed seeking to prohibit dogs from running at large unless properly registered or muzzled, or unless wearing a prescribed collar or tag.  These regulations are upheld as within the police power, even though they authorize the summary destruction of dogs for violation of the law: Commonwealth v. Chase, 6 Cush. 248; Morey v. Brown, 42 N. H. 373; Nehr v. State, 35 Neb. 638; Jenkins v. Ballantyne, 8 Utah 245; Hagerstown v. Witmer, 86 Md. 293; State v. Topeka, 36 Kas. 76, 59 Am.

Rep. 529; Haller v. Sheridan, 27 Ind. 494; Juienne v. Jackson, 69 Miss. 34, Am. St. Rep. 526; Contra. Mayor v. Meigs, 1 N. Car. 53, 20 Am. Rep. 578; Lynn v. State, 33 Tex. Crim. Rep. 152." Immediately following that excerpt the writer continues by pointing out that statutory provisions passed in the exercise of the police power whereby dogs may be killed under certain circumstances when their owners have not complied with the statutes are held to be constitutional, and we have been unable to find nor have we been cited to any case holding to the contrary.

In line with the universal rulings of courts as above pointed out we held in the case of Commonwealth v. Markham, 7 Bush 486, that a certain ordinance of the city of Frankfort providing for the registration and taxation of dogs and for punishment of their owners if they should fail to do so, followed by the right of the police to kill any dog not carrying the prescribed indices of its owner having complied with the law, were each a lawful exercise of the police power. And in the subsequent case of Farney v. Van Arsdell, 139 Ky. 247, it was expressly held that the provisions of the act of 1906, *supra,* whereby a dog might be killed when roaming upon another's premises outside the presence of his owner, were not invalid for constitutional or other reasons. In the case of Mc-Glone, Sheriff, v. Womack, 129 Ky. 274, the 1906 act was upheld in its entirety, and many of the objections raised in that case are duplicated in this one, including the inequality-of-taxation objection urged as violating sections 171-172 and 174 of the Constitution. The later acts of 1918 and 1920 sought to be annulled in this case are not different in kind from the original 1906 act which we upheld in the Womack case and in which similar objections here urged were denied. In the last cited case we held, in effect, as was also expressly done by the Supreme Court of the United States in the case of Mountain Timber Company v. Washington, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, that it was competent, in fixing the fees and charges in regulations under the police power, to do so "proportioned to the special injury attributable to the activities [or other thing] taxed." The total amount of all fees and charges prescribed under the police regulations of the assailed statutes are not out of proportion to the injuries intended to be repaired and produced by the nature and activities

of the dog, if, indeed, the combined collections amount to as much as those injuries, since it is a matter of common knowledge that in many counties the damage done by dogs to stock exceeds the net amount of the total license fees collected, and which damage it is the purpose of the statute to repair, in some measure, at least, by the enacting of the regulatory provisions under the police power of the state.

It is true that the two later acts prescribed some additional requirements to enforce the police purpose of the legislature in enacting them, but such additional features are of the same class and present no additional constitutional objections to their enactment, with the possible exception of the right of the sheriff to go upon and search the premises of the citizen for the purpose of ascertaining whether he harbors an unlicensed dog. It is urged against the latter that it violates section 10 of our Constitution in that it authorizes a search without a warrant; but whether that be true or not, we are not called on to determine in this case for the reason first stated above. Under that reason, before plaintiffs could complain, it should appear that their premises either had been so unlawfully searched and that the discovered evidence was to be used against them, or that such a search was threatened and the proceedings were instituted to prevent it. Likewise could they so complain if they had been arrested for violating any of the provisions of the statute, in which case they might raise the question by objecting to the introduction against them of the evidence that had been discovered by the alleged unlawful search; but until they are so circumstanced as to become directly affected they have no right to raise the question or to require the courts to determine it, and for that reason we decline to pass upon it in this opinion.

We have arrived at the above conclusions notwithstanding history may be searched in vain to find a living creature exhibiting as much fidelity and affection than does the dog to and for his master. Neither cold, heat, danger nor starvation deters him from manifesting those most excellent qualities in his love for his master, and those with whom he constantly associates. History is filled with instances where all others have fled, but the faithful dog stood guard, either as a mourner at his master's grave or with a determined purpose to administer to the latter if occasion presented itself. The press dis-

patches constantly record his unparalleled deeds of heroism for the protection and benefit of mankind, even at the sacrifice of his own life. Because of those qualities his virtues have been touchingly described by poets and celebrated in song, and rightfully the dog as a companion is most affectionately regarded by all persons who truly estimate loyalty and friendship as factors in smoothing the path of this world's existence. For those reasons some of the provisions of the statute whereby the innocent dog forfeits his life because of derelictions of an unappreciative master, are to be regretted. But, notwithstanding his many virtues, he also has faults, on account of which the law, as we have seen, does not accord to him the full measure of protection extended to other articles of property, leaving his status and the regulations of his existence to be fixed by the legislature as it in its wisdom sees proper in the lawful exercise of its police power. In other words, because of his sometimes vicious and destructive qualities he has been regarded and recognized by the law as only qualified property with the right in the legislature under the police power to prescribe regulations for his continued existence by either enlarging or abridging those recognized by the common law. When that is done it may not be said by his owner that his property rights have been interfered with, nor that police license fees invade constitutional requirements relating to taxation, unless the legislature first exceeds the limits of the police power.

For the reasons stated above the judgment is affirmed.