116 N.J. Super. 567 (1971)
283 A.2d 142
TOWN OF NUTLEY, PLAINTIFF-RESPONDENT,
v.
JAMES FORNEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided October 14, 1971.
*569 Mr. Anthony T. Drollas, attorney for respondent.
Mr. Daniel E. Scipio, attorney for appellant.
KAPP, J.C.C.
James Forney was tried and convicted in the Nutley Municipal Court on March 24, 1971 for violating section 7-C of an ordinance entitled, "An Ordinance [No. 961] to Regulate the Licensing of Dogs, to Regulate and Prevent the Running at Large of Dogs, and to Authorize the Destruction of Dogs Running at Large," and the amendments and supplements thereto, which, in pertinent part, provide that:
No person owning, harboring, keeping, or in charge of any dog shall cause, suffer, or allow such dog to soil, defile, defecate on or commit any nuisance on any common thoroughfare, sidewalk, passageway, bypath, play area, park, or any place where people congregate or walk, or upon any public property whatsoever, or upon any private property without the permission of the owner of said property. The restriction in this section shall not apply to that portion of the street lying between the curb lines, which shall be used to curb such dog under the following conditions:
(1) The person who so curbs such dog shall immediately remove feces deposited by such dog by any sanitary method approved by the local Health Authority.
(2) The feces removed from the aforementioned designated area shall be disposed of by the person owning, harboring, keeping, or in charge of any dog curbed in accordance with the provisions of this Ordinance, in a sanitary manner approved by the local Health Authority.
*570 He was sentenced to pay a fine of $10, and now appeals pursuant to R. 3:23.
The facts are these: Frank Plinio, a citizen who resides at 204 Walnut Street, Nutley, complained that on March 19, 1971 at 6:35 P.M. he saw Forney in front of 203 Walnut Street with a large Great Dane dog. He observed the dog squat and defecate in the street, about one foot from the curb. When Forney failed to pick up the excrement he called out to defendant that he was in violation of the ordinance, whereupon defendant remarked, "What are you worried about, I'm not doing it on your lawn." Defendant then left the area with the dog without removing the dung, which an officer, who responded to the scene, described as "a large deposit" and who opined that it was the dropping of a large dog.
Defendant here contends that section 7-C, supra, offends the equal protection clauses of our Federal and State Constitutions since it contains an unreasonable classification in singling out dogs for this type of regulation, and that it is unrelated in any substantial degree to the health, safety and welfare of the community and its inhabitants. Defendant further alleges that the ordinance fails to provide an adequate standard for the enabling means of disposition of the excrement.
A dog is not a nuisance per se. Smith v. Costello, 77 Idaho 205, 290 P.2d 742 (Sup. Ct. 1955), citing 39 Am. Jur. 347, § 65; 66 C.J.S. Nuisances § 32, at 785. But it has also been of the essence of civilized society, where many individuals live as neighbors, for each to exercise his rights with due regard to the rights of all  sic utere tuo ut alienum non laedas. Under such circumstances, this limitation of one's rights, if necessary to protect the rights of all, is not to be adjudged a taking of property without due process of law but, on the contrary, if properly carried out, it is but the use of due process of law for the protection of the rights of all. Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938); Annett v. Salsberg, 135 *571 N.J.L. 122 (Sup. Ct. 1947); Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (Sup. Ct. 1887); Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 (Sup. Ct. 1908).
So it is held, in 62 C.J.S. Municipal Corporations § 218, at 402, that
The right to the possession of dogs in a municipal corporation is subject to the limitation that such possession must not interfere with the health, security, and comfort of the other inhabitants of the corporation. It has generally been held that such possession may be subject to regulation by municipal corporations. The keeping of dogs is subject not only to many general ordinances against animals, but has also been made the subject of many special regulations.
Is this ordinance within the competency of the municipality to enact? In recent years there has been an unprecedented recognition and awareness that arises from the abuse of natural resources of air, water and land; "environment" has become a popular catchword. What had heretofore been the battle against the polluters is now an avowed endeavor to reverse the environmental deterioration and to improve the quality of our environment.[1] The environment is comprehensive and complex; it is the air we breathe, the water we drink, the noise we hear, the buildings, trees, flowers, oceans, lakes, rivers, the open spaces we view and through which we move, and the vehicles that transport us.
There was a time when dog owners loved their animals as pets,[2] but today we find that such large dogs are being *572 employed extensively for security purposes as well, because of the alarming increase in crimes of violence. The tons of solid waste and urine that are daily deposited by dogs[3] have undeniably fouled our streets, our walks and parks to the extent that it has become well-nigh intolerable, threatening the health and safety of our citizens.[4] The admixture of excrement with other litter, in and about our public walks and highways, has desecrated the landscape and has incited numerous environmental groups to press for corrective measures to ban this form of erosion, via the legislative halls throughout the country.[5] Dog droppings have become a scourge, a form of environmental pollution, no less dangerous and degrading than the poisons that we exude and dump into our air and water. Persons stepping into dog feces on sidewalks or in streets while crossing, or when entering or alighting from automobiles, can easily carry it on their shoes, and thence into their homes. Infants crawling about a rug or floor upon which such animal feces have been deposited may ingest them, since young children, especially babies, are known to be constantly placing their fingers into their mouths. Following a heavy rainfall, dog feces are known to find their way into sewers, along with other litter *573 and debris. In the Town of Nutley the sewers have a direct connection to the streams and estuaries of the Passaic River, a river which has been designated by environmentalists as one of the ten most polluted rivers in the country.[6]
There is abundant medical authority to the eflect that when the eggs or larva of the Toxocara Canis worm, which is found in the dog feces, infects a human it courses through the body and may well result in an attack upon a vital organism, such as the brain, lungs, liver or eyes.[7]
Adverting now to the appellant's assault upon the ordinance, we find that it is bottomed upon the authority conferred by N.J.S.A. 40:48-2, which provides that
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
*574 In considering such municipal measures as are designed to deal with problems of public health, regard must be had for the presumptive validity of an ordinance. Zampieri v. River Vale Tp., 29 N.J. 599 (1959); Mullin v. Ringle, 27 N.J. 250 (1958). With respect to the validity of such regulations concerning dogs, all presumptions are likewise in favor of validity. 62 C.J.S. Municipal Corporations § 218 at 403, citing State v. Mueller, 220 Wis. 435, 265 N.W. 103 (Sup. Ct. 1936); Regard must also be had for the doctrine that the governing body is entitled to wide latitude in its efforts at necessary municipal regulation and that the enactment that finally issues forth should not be disturbed unless it is palpably unreasonable or in conflict with some superior statutory or constitutional limitation. Nor may we lose sight of the mandate in N.J. Constitution (1947) Art. IV, § VII, par. 11, to liberally construe legislation concerning municipal power. Marangi Bros. v. Board of Comm'rs of Ridgewood, 33 N.J. Super. 294 (App. Div. 1954).
In the case of Jones v. Haridor Realty Co., 37 N.J. 384 (1962) Justice Francis said:
One of the basic functions of government is to safeguard the health, safety and welfare of its people. Upon the appearance of conditions detrimental to their welfare, it has the duty to apply remedial measures. The courts in turn are required to respect and sustain such efforts as an exercise of the legislative police power so long as they are not clearly arbitrary and are reasonably related to the objective sought to be attained. [at 393]
While such a regulation, albeit lawful, may be considered by some to be drastic in its operation, yet the court is not at liberty to substitute its judgment for that of the municipality. Peoples Rapid Transit v. Atlantic City, 105 N.J.L. 286 (Sup. Ct. 1929), aff'd Parlor Car Deluxe Coach Co. v. Atlantic City, 106 N.J.L. 587 (E. & A. 1930); Newark v. Charlton Holding Co., 9 N.J. Super. 433 (Cty. Ct. 1950). All such questions of policy, wisdom and expediency are for the legislative and not the judicial branch of the government. *575 Jones v. Haridor Realty Corp., supra. "The wisdom of legislative action is reviewable only at the polls. The judicial role is tightly circumscribed." Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957). Furthermore, merely because an ordinance is burdensome or distasteful to some individuals will not render it arbitrary or unreasonable per se.
In the means employed to advance the public health and safety, the legislative authority has broad discretion. Amodio v. Board of Comm'rs, West New York, 133 N.J.L. 220 (Sup. Ct. 1945). A state may grant to cities and towns the right to exercise such parts of the police power as to dogs as it may deem proper. 4 Am. Jur.2d, Animals, § 23, at 269. It is apparent therefore that the ordinance itself bears a substantial relation to the security of the public health.
Defendant next claims that the ordinance is invalid in that it contains an unreasonable classification in singling out dogs for this type of regulation. Not so. The governing body is endowed with a high degree of discretion where, as here, the legislation is inspired by considerations of public health. Dogs are generally made the subject matter of "special and peculiar regulations." 4 Am. Jur.2d, Animals, § 3 at 252. And this "without depriving their owners of any constitutional right." Id., § 6, at 254; § 23, at 269, citing Nicchia v. New York, 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235, 13 A.L.R. 826 (1920); Sentell v. New Orleans & C.R. Co., 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897); Simpson v. Los Angeles, 40 Cal.2d 271, 253 P.2d 464, app. dismd. 346 U.S. 802, 74 S.Ct. 37, 98 L.Ed. 333, reh. den. 346 U.S. 880, 74 S.Ct. 118, 98 L.Ed. 387 (Sup. Ct. 1953); McPhail v. Denver, 59 Colo. 248, 149 P. 257 (Sup. Ct. 1915); Shadoan v. Barnett, 217 Ky. 205, 289 S.W. 204, 49 A.L.R. 843 (Ct. App. 1926); Blair v. Forehand, 100 Mass. 136 (Sup. Ct. 1868); Van Horn v. People, 46 Mich. 183, 9 N.W. 246 (Sup. Ct. 1881); Julienne v. Jackson, 69 Miss. 34, 10 So. 43 (Sup. Ct. 1891); Carthage v. Rhodes, 101 Mo. 175, 14 S.W. 181 (Sup. Ct. 1890); *576 State v. Harrell, 203 N.C. 210, 165 S.E. 551 (Sup. Ct. 1932); Dickinson v. Thress, 69 N.D. 748, 290 N.W. 653 (Sup. Ct. 1940); Commonwealth v. Haldeman, 288 Pa. 81, 135 A. 651 (Sup. Ct. 1927); State v. Anderson, 144 Tenn. 546, 234 S.W. 768, 19 A.L.R. 180 (Sup. Ct. 1920). Annotation: 49 A.L.R. 847.
The defendant further claims that the ordinance is deficient because it fails to set forth a definitive standard for the disposition and removal of the dog feces, except to declare that it shall be "in a sanitary manner approved by the local Health Authority." This contention is untenable. It does not require any degree of ingenuity to understand that the measure mandates the owner to remove the droppings of his dog from the prohibited area, and to dispose of them. It is fair to assume that a master who truly values his pet will not find it to be unduly oppressive or demeaning to remove the excrement, encase it in a wrapper or a container and dispose of it in a garbage receptacle or in some other suitable manner. See Brandon v. Montclair, 124 N.J.L. 135, 143 (Sup. Ct. 1940); aff'd 125 N.J.L. 367 (E. & A. 1940), where Justice Heher rightly noted that
A statute often speaks as plainly by inference, and by means of the purpose which underlies it, as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed. [at 143]
See also West Jersey and Seashore R.R. Co. v. Board of Public Utility Comm'rs, 87 N.J.L. 170 (E. & A. 1915).
In Annett v. Salsberg, supra; Justice Wachenfeld declared that
The prohibition contained in the instant law [R.S. 26:3B-7, L. 1945, c. 192] is palpably in the interest of public health. The statute bears a direct and substantial relation to it and is obviously a regulation designed to protect the community from the ravages of disease and contagion. It is reasonable, advisable and necessary and therefore, we think, unassailable.
The statute is not so vague as to make it unconstitutional. Its mandates so clearly express the acts condemned that the ordinary *577 person could intelligently and easily conclude what is prohibited. Reasonable certainty fulfills the constitutional requirement and liberal effect is always given to the legislative intent, where possible.
The principle is also aptly expressed by Justice Heher in Mansfield & Swett, Inc. v. West Orange, supra:
The state possesses the inherent authority  it antedates the Constitution  to resort, in the building and expansion of its community life, to such measures as may be necessary to secure the essential common material and moral needs. The public welfare is of prime importance; and the correlative restrictions upon individual rights  either of person or of property  are incidents of the social order, considered a negligible loss compared with the resultant advantages to the community as a whole. Planning confined to the common need is inherent in the authority to create the municipality itself. It is as old as government itself; it is of the very essence of civilized society.
Now, with respect to the claim of unreasonableness of that part of the ordinance which mandates that the owner shall curb his dog in the street between the curb lines: in McGonnell v. Comm'rs of Orange, 98 N.J.L. 642 (Sup. Ct. 1923), the court declared:
The power of a city council or other body to pass ordinances relating to the various matters entrusted by the legislature to its jurisdiction, carries with it the implication (expressed in many cases) that such ordinances must be reasonable. Every intendment is made in favor of their reasonable character, and to support them a construction will be placed on them which will make them reasonable rather than unreasonable; but the question of their reasonable character is for the court, which will not hesitate to declare them void if plainly unreasonable. This is familiar law, acted on in a multitude of cases, in many of which the court confined its action to the particular part of the ordinance shown to be unreasonable, leaving the rest to stand. Some of the cases follow: Long v. Jersey City, 37 N.J.L. 348, 351; Pennsylvania Railroad Co. v. Jersey City, 47 N.J.L. 286, 288, in the Court of Errors and Appeals, where Chief Justice Beasley said in the opinion: "If this bylaw [ordinance] be subject to this imputation [that it is unreasonable] there can be no doubt that it would be the duty of this court to pronounce it a nullity."
Again in Wagman v. Trenton, 102 N.J.L. 492 (Sup. Ct. 1926), we find:
*578 Where, as here, the subject-matter of the ordinance is within the police power of the city and the ordinance is adopted by the proper legislative body of the city, the presumption is (until the contrary be shown) that the ordinance is reasonable. The question of reasonableness is a question of fact, and the burden of proof is upon the prosecutor who attacks the ordinance to show its unreasonableness. The court should not interfere unless it is shown that the ordinance, either upon the face of its provisions or by reason of its operation in the circumstances under which it is to take effect, is unreasonable or oppressive. Falco v. Atlantic City, 99 N.J.L. 19; North Jersey Street Railway Co. v. Jersey City, 75 N.J.L. 349.
In the leading case on the exercise and the the limitations of police power, Justice Heher in New Jersey Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1940), stated:
The restraints and regulations imposed for the general good and welfare must needs have the virtue of reasonableness. There cannot be, in the name of police regulation, an unreasonable and oppressive curtailment of personal or property rights. [at 168]
The public right of reasonable regulation for the common good and welfare is denominated as the police power. The exertion of this sovereign authority is controlled by constitutional and statutory delineation. The restraint thus laid upon individual rights  either of person or of property  may not go beyond the public need; and the means employed must be both reasonable and appropriate to that end.
If a person is required to exercise or walk his dog only in the street, it exposes him and his dog heedlessly and unnecessarily to the dangers of vehicular traffic and therefore runs counter to the public safety. This is particularly true where the owner resides in a congested area on a main thoroughfare where the flow of traffic may be unusually heavy and the likelihood of injury readily foreseeable. So long as the owner of the dog is required to remove its feces, it is of no consequence that they may be dropped between the curb lines or elsewhere.
That part of the measure which mandates that the owner shall curb his dog in the street between the curb lines is *579 unreasonable, arbitrary and dangerous to life and limb and therefore invalid.
However, since such invalidity of a portion of an ordinance does not render another part invalid, where the two parts are separable and are not dependent on each other, State v. Western Union Telegraph Co., 13 N.J. Super. 172 (Cty. Ct. 1951); Affiliated Distillers Brands Corp. v. Sills, 56 N.J. 251 (1970); 62 C.J.S. Municipal Corporations § 218 at 403, we have determined that the underlying purpose of the ordinance, i.e., to remove the excrement and to dispose of it in a sanitary manner is a valid exercise of the municipal power inasmuch as it is designed to safeguard the health and well-being of the populace.
Affirmed.
NOTES
[1] Air Pollution Control Act, N.J.S.A. 26:2C-1 et seq.
[2] Dog lovers are legion; it has been said that the one absolutely unselfish friend a man may have in this selfish world is the dog. The pages of history are bright with the record of spectacular tasks performed by dogs, many of them who tax our credulity. The German Shepherd has carved a well-earned niche in the Hall of Fame as a guide dog to the blind, bringing light into the darkness of countless lives. Moreover, he has no peer in the uncanny sense of detection he brings to police work. There probably never has been a war in which a dog has not participated. Nature has endowed this animal with his chief military value  an extraordinary development of the senses of smell and hearing. A satisfactory mechanical substitute for them has yet to be invented. These gifts combined with the unquestioning faithfulness, intelligence, adaptability, and endurance and utter willingness to serve for no more than a friendly pat and a kind word have made them an important adjunct in man's wars down through the ages.
[3] We take judicial cognizance of such general facts of natural history relating to the animal kingdom, 31A C.J.S. Evidence § 87, at 117; the ordinary habits, characteristics and instincts of dogs are matters of common knowledge. Ibid., at note 69.
[4] See Kramer, "Awash in Excrement, New York Fights Back Against 500,000 Dogs," Wall Street Journal, p. 1 (May 28, 1971).
[5] Legislation has been enacted in several jurisdictions to outlaw the sale of nonreturnable beverage containers. Soft drinks, beer, fruit juices and milk are required to be sold in returnable containers carrying a minimum deposit of five cents. Thus there is a concerted effort to prevent urban America from being buried under billions of tons of garbage it produces every day.
[6] Nutley, according to the 1970 census, has a population of 31,913 inhabitants within a land area of 3 1/2 square miles. In 1970 1938 dog licenses were issued, and thus far in 1971 2182.
[7] See the monograph entitled "Toxocariasis" by A.W. Woodruff, M.D., F.R.C.P., British Medical Journal 663 (Sept. 1970); its concluding paragraph reads in part:

The evidence indicates that there is now enough knowledge to act, firstly, to control the infection in dogs and cats and thus prevent many developing the disease, and, secondly, to increase awareness of and use of diagnostic and therapeutic facilities to deal with the infection in man. Possibly the most important conclusion from this work is that though hardly known as a human infection till 10 years ago toxocariasis is widespread and an important cause of morbidity. The clinical and public health problems the infection presents are serious and need urgent attention. See also, in furtherance of this conclusion, Bourke, G.M. and Yeates, F.M., "Blindness Due to Household Pets (Toxocara Canis Infestation); M.J.A., July 1, 1961, 12-14, and Beaver, P.C., "Toxocarosis (Visceral Larva Migrans) in Relation to Tropical Eosinophilia"; Bull. de la Soc. de Path. Exot., 1962, 55, 555-576.