STATE v. ELIZABETH HARRELL.

(Filed 21 September, 1932.)

1. **Municipal Corporations H d—Ordinance relating to dogs held valid exercise of police power.**

   An ordinance of a city providing that a certain species of dog, or dogs of vicious tendencies shall be muzzled by the owners or kept upon the premises or not permitted to run at large within the corporate limits falls within the police powers of the city regarding the safety and health of its citizens, and is a valid abrogation of the rights of the owners in property of this character.

2. **Municipal Corporations H e—Evidence of violation of city ordinance held sufficient to overrule motion of nonsuit.**

   Evidence tending to show that a certain dog was owned by the defendant and that it had attacked and bitten several persons to the knowledge

of the owner, including an attack upon the child of the prosecutrix, is sufficient to resist a motion as of nonsuit in an action under an ordinance of a city prohibiting vicious dogs to run at large within the city limits without being muzzled.

3. **Criminal Law I h: L e—Weight of evidence in criminal action is for jury and on appeal only matters of law or legal inference may be reviewed.**

The competency, admissibility and sufficiency of the evidence in a criminal action is for the court, the weight, effect and credibility is for the jury, and on appeal the Supreme Court can review only matters of law or legal inference. Constitution, Art. IV, sec. 8.

4. **Criminal Law L d—Where charge does not appear in record it is presumed correct.**

When the charge of the judge of the Superior Court is not made to appear in the record on appeal the presumption is that the court correctly charged the law arising on the evidence.

APPEAL by defendant from *Grady, J.,* and a jury, at March Term, 1932, of VANCE. No error.

Upon the following warrant, the defendant was tried in the city of Henderson Municipal Court: "That at and in said county, and in the city of Henderson (or within one mile thereof), on or about 22 June, 1931, Miss Elizabeth Harrell did unlawfully and wilfully allow a vicious and dangerous dog to run at large, said vicious and dangerous dog did attack Margaret Brinkley on Harrell Street in the city of Henderson. And did unlawfully and wilfully, suffer and permit a vicious and dangerous dog known to the said Elizabeth Harrell to be of vicious and dangerous tendency to be at large within the city of Henderson without being muzzled, in violation of the ordinance of the city of Henderson, and against the form of the statute in such cases made and provided, and contrary to law and against the peace and dignity of the State."

The record discloses: "Warrant returned 25 June, 1931, executed, and the following proceedings had: defendant appearing in person and pleading not guilty. After hearing the evidence, and it appearing to the court that the defendant is guilty, it is considered and adjudged by the court that defendant, Elizabeth Harrell, pay a fine of $5.00 and the costs of this action, viz.: $12.50. Notice of appeal was duly given. Appeal bond fixed at $25.00 for her appearance at the next term of Vance Superior Court to answer said charge. This 25 June, 1931.    Irvine B. Watkins, Mayor."

The defendant was tried before the Hon. Henry A. Grady, judge, and a jury, at the March Term, 1932, of the Superior Court of Vance County, upon an appeal from the mayor's court of the city of Henderson. The defendant was charged with a violation of ordinances of the

city of Henderson in respect to vicious and dangerous dogs. The jury returned a verdict of guilty. The sentence of the court was: "Judgment suspended upon payment of costs." The defendant made several exceptions and assignments of error and appealed to the Supreme Court—the material ones will be considered in the opinion.

The evidence was to the effect that Margaret Brinkley, a young girl about 16 years of age, lived in the city of Henderson, N. C., across the street from defendant. That on 22 June, 1931, she started across the street. "After I got on the curbing *a dog came from Miss Harrell's yard,* and was barking and carrying on so, it almost scared me to death. The dog that ran out of her yard on that day *was a white dog with some brown spots,* I think. It was a middle size dog. The dog did not bite me. I tried to get back to my porch. Mr. Capps was on the porch across the street, and hollered to the dog and waved his cane and frightened the dog. The dog went on down the street. . . . At different times I have seen at least twelve dogs in her yard. I don't know what kind of dogs they were."

J. D. Capps testified, in part: "I hollered at the dog and he went away. I do not think the dog had on a muzzle. *I have seen this dog at Miss Harrell's,* but have not seen him since that day."

Helen Wells, testified, in part: "A. I could not say to be exact, but I would say 10, 12 or maybe 15 dogs. *I know that Miss Harrell's dogs bit me and bit my little boy.* The dog that bit me was a white dog, and looked like it was part bull dog. When the dog bit me I was right by Central School, on my way home. I could not say what day or month it was, but it was in warm weather; it was last summer. The dog only stuck his teeth in me one time, but tore my uniform and hose off of me. Two dogs jumped on me, and as well as I can remember, the white dog had a long tail and the bull dog had a short tail. The bull dog had brown spots. *I saw one of Miss Harrell's dogs bite my little boy right in front of Mrs. Brinkley's house.* That dog was not muzzled and the dogs that attacked me were not muzzled. Shag and one of the same dogs that attacked me attacked my child. Shag is just an ordinary black, shaggy dog. My boy was bit before I was." It is admitted that the matter testified to by this witness were brought up in a former trial wherein the defendant was prosecuted under the same ordinance, and that there was a conviction and no appeal.

E. T. Shepherd, testified, in part: "As we were going to Mr. Brinkley's *this white and brown dog* ran across the street, and I ran up on the porch. Miss Brinkley said it was the same dog that ran after her. . . . The dog was loose in the street without a muzzle. . . . The dog came from Miss Harrell's yard."

Mayor Irvine B. Watkins, testified, in part: "Miss Harrell has talked to me so many times about this matter I could not give her exact language. *In these conversations she has admitted that the dog that attacked Miss Brinkley was the same one that attacked Mrs. Wells and her child.* At first she denied the ownership of the white dog, and then said she had owned him six months, and had taken him to a doctor in Raleigh, and that now she had disposed of him. I asked her what right she had to dispose of him, and she disposed of him after he bit this child. *That was the white dog."*

The defendant testified, her testimony was negative, in regard to what she told Mayor Watkins. "I do not think I told Mayor Watkins that it was the same dog that bit Mrs. Wells and her child." The record discloses that the defendant's general reputation is good.

Britt Grissom testified, in part: "I did live on Harrell Street, one house between Miss Harrell's house and mine. . . . Q. Tell what you know about two dogs of Miss Harrell's and your children in May or June of last year? A. I was at breakfast one morning, and my children were playing in the yard. Two dogs came over and tried to attack them. *One was a white dog with one or two brown spots,* and another dog. The children ran up in the porch and I ran out in the yard and ran them off. I went back to finish eating my breakfast and the dogs started back again. The children were screaming, and I would have shot the dog but there was someone in front and I was afraid I would shoot them instead of the dog. I had some conversation with Miss Harrell about the dogs before Miss Brinkley was attacked. *I saw the white dog with the spots on the street practically every day.* They ran at large up until we had the hearing in the magistrate's court. *The dogs were not muzzled when they ran at large."*

H. B. Harris, testified, in part: *"I saw the dog that ran after Miss Brinkley; it was a dog that Miss Harrell claimed, one that was called her dog. The dog that bit the Wells child was the same dog that ran after the Brinkley girl.* I did not see the dog that bit Mrs. Wells. *I saw this same dog on the street three or four times after the Wells child was bit.* When I saw the dog he was in Miss Harrell's yard, or on the sidewalk not far from the house. *He did not have a muzzle on."*

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*H. B. Harrell, Jr., for defendant.*

CLARKSON, J. At the close of the State's evidence and at the close of all the evidence, the defendant made motions for judgment of nonsuit.

C. S., 4643. The court below overruled these motions, and in this we can see no error. These were the only material exceptions and assignments of error.

The defendant was tried and convicted on the following two ordinances of the city of Henderson, N. C.:

"Chapter 7—Dogs: Sec. 68. If the owner of any vicious or dangerous dog shall allow the same to run at large, he shall pay a penalty of fifty dollars.

Section 69. That it shall be unlawful for any person to suffer or permit a bulldog, bull-terrier or other dog of known or vicious tendencies, to be at large within the city without being muzzled. In addition to the penalty provided by the ordinance for violation of this ordinance, it shall be the duty of the police to seize and impound any such dog found at large without a muzzle, and unless it be claimed and impounding fee of one dollar be paid within three days for the policeman making such seizure, such dog shall be killed."

In *S. v. Abernethy,* 190 N. C., at p. 771, we find: "It is provided by C. S., 4174, that if any person shall violate an ordinance of a city or town, he shall be guilty of a misdemeanor, and shall be fined not exceeding fifty dollars, or imprisoned not exceeding thirty days. It is this statute which makes the violation of the present ordinance a misdemeanor, and not the ordinance itself. *S. v. Taylor,* 133 N. C., 755."

The brief of the defendant says: "Both of the foregoing sections were introduced in evidence by the State in this action, and said sections were admitted to be valid town ordinances by the defendant through her counsel."

The U. S. Supreme Court, in *Sentell v. New Orleans & C. R. Co.,* 166 U. S., sec. 701, at p. 1170-1, has this to say about dogs: While the higher breeds rank among the noblest representatives of the animal kingdom, and are justly esteemed for their intelligence, sagacity, fidelity, watchfulness, affection and above all, for their natural companionship, with man, others are afflicted with such serious infirmities of temper as to be little better than a public nuisance. All are more or less subject to attacks of hydrophobic madness. . . . Acting upon the principle that there is but a qualified property in them, and that, while private interests require that the valuable one shall be protected, public interests demand that the worthless shall be exterminated, they have, from time immemorial, been considered as holding their lives at the will of the legislature, and properly falling within the police powers of the several states." *Bugai v. Rickert,* 242 N. W. Rep. (Mich.), 774. 19 R. C. L., p. 822, sec. 126; 8 A. L. R., p. 74; *Mowery v. Salisbury,* 82 N. C., 175;

*S. v. Clifton,* 152 N. C., 800, cited and annotated in 28 L. R. A. (N. S.), p. 673; see *S. v. Smith,* 156 N. C., 628.

In Vol. 3 (2d ed.), sec. 1004, McQuillan on Municipal Corporations, is found, the law in regard to the Regulation of Dogs, as follows: "To safeguard and promote the public health, safety and convenience municipal power to regulate the keeping and licensing of dogs within the corporate area is generally recognized. Accordingly ordinances regulating dogs and requiring them to be registered and licensed, and at times muzzled and prevented from going at large, are within the police powers usually conferred upon the local corporation. Such ordinances are authorized by virtue of general powers and the usual general welfare clause. Thus power to protect life, health and property authorizes an ordinance requiring owners of dogs, under penalty, to muzzle them, or keep them on their own premises, and directing the marshal to kill all dogs found running at large. An ordinance authorizing the mayor, whenever he may apprehend danger of the existence or spread of hydrophobia to issue a proclamation requiring all owners of dogs to confine or muzzle them is not invalid as a delegation of legislative power to an executive officer." Under this law it was unquestionably legal for the good dog "Tray" to be chastised for being in the company of the bad dog "Tiger."

Whatever may be one's individual view in regard to dogs, the law is well settled, as conceded by defendant. The sole question then—was there enough evidence to be submitted to the jury that the dog in question belonged to defendant and was a bad dog in the purview of the ordinance? We think so.

The competency, admissibility and sufficiency of the evidence is for the court to determine; the weight, effect and credibility is for the jury.

"The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the courts below, upon any matter of law or legal inference," etc. Const., of N. C., Art. IV, sec. 8.

On motion to dismiss or judgment of nonsuit, the evidence is to be taken in the light most favorable to the State, and it is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

The accusations against defendant were (1) that defendant did on or about 22 June, 1931, unlawfully and wilfully allow a vicious (or) and dangerous dog to run at large: (2) did suffer and permit a vicious (or) and dangerous dog, known to the said defendant to be of a vicious and dangerous tendency to be at large within the city of Henderson, without being muzzled. The evidence to sustain both the accusations, set forth above, was plenary to have been submitted to the jury—(1) the identity

of the dog; (2) the ownership in defendant; (3) the same dog that had bitten Mrs. Wells and boy, indicating that the dog was vicious or dangerous; (4) the dog was off defendant's premises and at large; (5) the dog was not muzzled.

The charge of the court below is not in the record, the presumption is that the charge of the court was correct and the court below properly applied the law applicable to the facts in the case. It is for the jury, and not for us, to pass on the evidence. The jury has found defendant guilty, in law we find

No error.