JAMES H. BARNES v. NELLO TEER, TRADING AND DOING BUSINESS AS THE NELLO TEER CONSTRUCTION COMPANY.

(Filed 18 September, 1940.)

**1. Trial § 22b—**

Upon a motion to nonsuit, the evidence tending to establish plaintiff's cause of action is to be considered in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Appeal and Error § 1—**

Only matters of law or legal inference are reviewable by the Supreme Court upon appeal. Constitution of North Carolina, Art. IV, sec. 8.

**3. Trial § 19—**

The competency, admissibility and sufficiency of the evidence is for the court; the weight, effect and credibility is for the jury.

4. **Automobiles § 18c—Evidence held not to disclose contributory negligence as matter of law on the part of plaintiff struck by truck approaching from opposite direction on its left side of highway.**

Plaintiff's evidence tended to show that the highway at the place of the accident was covered with loose stone, but was open to travel by the general public, that all ruts in the stone made by traffic were on plaintiff's right-hand side of the highway, that plaintiff's car was equipped with good brakes and tires, that plaintiff sounded his horn before rounding a sharp curve at a speed of about 15 miles per hour, that as he rounded the curve he saw defendant's truck 30 feet distant, loaded with crushed gravel, approaching from the opposite direction on its left side of the highway, that plaintiff, in an effort to avoid a collision, pulled over on the shoulders of the road to his right, but that the back end of the truck collided with the front end of plaintiff's car, causing it to overturn and resulting in the injuries in suit. *Held:* Defendant's motions for judgment as of nonsuit were properly overruled.

5. **Automobiles § 18f—**

Evidence that defendant was driving his car at the rate of 40 miles per hour three or four miles away from the scene of the accident and from fifteen to 45 minutes prior thereto, without evidence tending to show the condition of the highway at those places, is incompetent to show that defendant was driving at an excessive speed under the conditions prevailing at the scene of the accident.

6. **Same—**

Testimony that plaintiff on other occasions was seen operating his car dangerously, recklessly and fast is incompetent to show that plaintiff was traveling at an excessive speed at the time of the accident in suit.

7. **Automobiles § 18h—Charge of the court on the questions of negligence, contributory negligence and proximate cause held without error in this case.**

In this action to recover damages sustained by plaintiff in a collision between his car and defendant's truck which was being driven on its left side of the highway, the charge of the court *is held* to have correctly placed the burden of proof upon the issues, and to have correctly instructed the jury upon the questions of negligence, contributory negligence, and proximate cause, and to have properly stated the rule requiring cars traveling in opposite directions to pass on the right, and the right of a motorist to assume that the driver of a car approaching from the opposite direction on his left side of the highway will observe the rule and turn to his right, and further the charge *is held* to state the evidence in a plain and concise manner and apply the law applicable thereto and to instruct the jury on every substantial and essential feature of the case. C. S., 564.

8. **Trial § 33—**

A misstatement of the contentions of the parties must be brought to the court's attention in apt time.

BARNHILL, J., dissents.

APPEAL by defendant from *Nettles, J.*, at July, 1940, Civil Term, of BUNCOMBE. Affirmed.

This was an action for actionable negligence, alleging damage, brought by plaintiff against the defendant. The action was tried in the general county court of Buncombe County, before Kitchin, J. The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Ans.: 'Yes.'

"2. Was the plaintiff guilty of contributory negligence, as alleged in the defendant's answer? Ans.: 'No.'

"3. What damages, if any, is the plaintiff entitled to recover of the defendant? Ans.: '$5,000.00.'"

Judgment was rendered on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Superior Court. The Superior Court overruled the exceptions and assignments of error of defendant, who appealed to the Supreme Court.

The plaintiff testified in part, that he was 35 years of age and was on 21 January, 1939, riding on the California Creek Road, in Madison County, North Carolina, driving an old 1930 model Ford. It had good brakes, tires and horn on it. The car was in good condition. The general public was using the highway, which was open to traffic. Miss Floy Ballard was in the car with him. Gravel was being spread on the highway, he was coming down the road on the right-hand side, going south; he rounded a sharp turn and as he rounded the curve, square over on the same side of the road, he met defendant's truck coming north, loaded with crushed gravel. Before he rounded the curve he blew his horn. He had to pull sharply over to the right, being forced over on the shoulder of the road, in an effort to avoid a collision. Just as he passed the truck the rear end of the truck struck his car—hit the front of his car as the driver of the truck made an effort to get on his side of the road, he was crossways the road and had it blocked. From that time he remembered nothing until he woke up in the Mission Hospital in Asheville. After the truck hit his car he remembered the car going over, he remembered the car did not hit the truck, but the front end of his car came in contact with the truck on the back end. He was knocked off the road. He did not go over on the shoulder until he was forced over there. When he came around the curve he saw the truck on his side of the road and pulled over in an effort to avoid a collision. When the truck hit his car it seemed that he had been on the shoulder about 30 feet. He knew that he turned over when the truck hit him, he immediately went over. There were ruts in the gravel, loose stone on the road. The tracks looked like all the traffic had been practically going on the left-hand side of the road coming up. The ruts were on his side of the road as he went down. He was in those ruts because they were on his side of the road as he came down. When he saw the truck some 30 feet

from him, he pulled sharply to the right to try to avoid a collision.  He put on his brakes when he saw the truck and was going about 15 miles per hour.  He did not have time to determine how fast the truck was traveling as it came around the curve.  It was speeding and driving in a reckless manner.  It was a pretty steep grade.  There was not room between the truck and the side of the road on which plaintiff was driving to pass, because the truck was on the same side of the road, all but the shoulder.  There might have been a foot of gravel between the truck and the shoulder.  The accident occurred between 4:30 and 5:15 or 5:30. The only thing he could remember after the accident was that the truck struck the front of his car, he was forced off the road and turned over. He did not recall where they took him after the accident, but only knew that he woke up in Mission Hospital.  He received two broken jawbones; a cut on his chin, cut over his right eye and was operated on once to have a wire put in to hold his jawbone together and again to have the wire removed.  He had to have a dentist wire his teeth together. He did not sleep very much while in the hospital and was only able to take liquid foods for 12 weeks.  He was confined to the bed after leaving the hospital and has not been able to work since the injury.  His jaw from the center around on the left lower jaw as it lies does not have any feeling in it whatsoever and has not had since the jawbone was broken, there is a dead place on the outside of the flesh.  He cannot open his mouth or jaws full length.

Miss Floy Ballard testified, in part: "I went out with him over into Madison County that afternoon.  To his grandfather's. . . . I came back in the car with Mr. Barnes.  Going up there on this road, as soon as we entered the stone road, I told him not to drive fast, he was not driving fast on the stone road at all.  We came back; I looked at the watch and it was 5:15 just before we came to this truck, passed about three other trucks on the road or two other trucks, then we came around this turn, just that way around the turn, and met the truck on the wrong side of the road; when we saw the truck Jim put on brakes, blew the horn, tried to stop.  We were so close on the truck he couldn't stop.  He took the shoulder of the road and the back of the truck hit the front of our car and knocked us over.  I was in the car when it turned over.  I helped get him out. . . . I don't think he made more than 25 miles an hour at any time; I would say coming back he put on the brakes as he started around the curve and saw the truck, I would say he was making around 15 miles an hour.  We had not been going over 25 miles an hour. Then he slowed down a little as he went around the curve.  I noticed ruts in the gravel, ruts on the left side going up; they were on the left-hand side.  I am sure about that.  There was only one set of ruts going up.  When we passed the truck our car went over on the shoulder,

before we got to the truck; when the truck hit us we turned over. I think we turned right then. Well, we got on the shoulder just before we got to the truck; he was trying to miss the truck; before we got to the truck he took the shoulder; he saw the truck was not going to get out of the way; when he blew at the truck it moved over trying to get out of the road, and the back of the truck hit the car and we turned over. When we met the truck we were still on the edge of the curve; the truck knocked us over on the bank. We were on the shoulder before we met the truck; when we met the truck it knocked us over."

Dr. Farrar Parker corroborated plaintiff as to his injuries, and testified: "I treated Mr. Barnes over a period of six months from January through July and during that time I saw him sufficient number of times, with these three operations, and my bill was $450.00 for the total services. He has paid me $25.00 at intervals when he was able to, when he was financially able to. I think Mr. Barnes was one of the most cooperative patients I ever had. That night he had, as I said, his jaw hanging loose. We were able to push it back in place without an anaesthetic. On subsequent operations these were done under novocaine; he stood the pain and extremely well put up with it, so that he showed and I think he was coöperative in every sense."

Mr. Greene testified, in part: "There were ruts on the left side of the road going up. I didn't see ruts on the right-hand side of the road going up."

Several witnesses testified as to the general reputation of the plaintiff being good. The driver of the defendant's truck denied that the collision occurred as testified to by plaintiff, as did other witnesses.

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts and assignments of error will be considered in the opinion.

*Sale, Pennell & Pennell for plaintiff.*
*Heazel, Shuford & Hartshorn for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendant in the general county court for Buncombe County, made motions for judgment as in case of nonsuit. C. S., 567. The court overruled these motions and on appeal to the Superior Court the rulings were sustained. In this we can see no error. The often repeated rule is that the evidence which makes for plaintiff's claim, or tends to support his cause of action, on a motion to nonsuit, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

This Court has nothing to do with the findings of fact by the jury and on appeal defendant's evidence is not to be considered.

N. C. Const., Art. IV, sec. 8: "The Supreme Court shall have jurisdiction to review, upon appeal, any decision of the courts below, upon any matter of law or legal inference," etc. On appeal to the Supreme Court, only error as to the law or legal inference are reviewable upon the record in the case. *Bank v. Howard,* 188 N. C., 543. The competency, admissibility and sufficiency of the evidence is for the court, the weight, effect and credibility is for the jury, and on appeal the Supreme Court can review only matters of law or legal inference. *S. v. Casey,* 201 N. C., 185; *Debnam v. Rouse,* 201 N. C., 459; *Carter v. Mullinax,* 201 N. C., 783; *Bakery v. Ins. Co.,* 201 N. C., 816; *S. v. Harrell,* 203 N. C., 210; *S. v. Whiteside,* 204 N. C., 710.

The only question we now have to consider: Was there any prejudicial or reversible error on the exclusion of certain evidence and charge of the court? We think not.

The evidence tended to show that plaintiff was driving his car on the right side of a State Highway, open and carrying normal traffic. The defendant's truck was hauling gravel to be spread on the road across the mountain 5 or 6 miles from where the wreck occurred and the truck was on the left-hand side of the road, square over on the left-hand side with the wheels in a rut on said side. Defendant's truck struck plaintiff's car and seriously injured him. The plaintiff received permanent injuries, having both jawbones broken, cuts in chin and over an eye. He was operated on three times and is now suffering from permanent injuries, embracing a partial paralysis of the face, and is restricted in opening his mouth from $\frac{1}{4}$ to $\frac{3}{4}$ of an inch less than an average male. The plaintiff's car was in good condition, with good tires, brakes and horn. He was going south around a curve, running about 15 miles an hour, sounding his horn, and on the right-hand side of the road. The defendant's truck was coming up the road on the left-hand side of the road, square over on the left-hand side with the wheels in the rut on said side, right in the face of plaintiff's car. The rear end of defendant's truck struck plaintiff's car. Plaintiff was on the right side of the road, defendant's truck was on the wrong side. Plaintiff was permanently injured.

In *Hancock v. Wilson,* 211 N. C., 129 (134), we find: "When the driver of one of the automobiles is not observing the rule of this section (Laws 1927, ch. 148, sec. 11), as the automobiles approach each other, the other may assume that before the automobiles meet, the driver of the approaching automobile will turn to his right, so that the two automobiles may pass each other in safety."

BARNES *v.* TEER.

Certain assignments of error made by defendant cannot be sustained. The evidence sought to be admitted was with reference to the speed of the plaintiff's car 3 or 4 miles away, at a time varying from 15 to 45 minutes from the hour of the accident, the witness would have testified that plaintiff's speed was approximately 40 miles an hour. No evidence was offered or attempted to be offered which showed conditions on the highway at that place. The evidence as to speed 3 or 4 miles at 5 :00 o'clock, when the wreck occurred some time between 5 :00 and 5 :30, and that the speed at that distance and time was 45 miles an hour. By the same witness appellee (defendant) undertook to show that he had seen plaintiff on other occasions operating his car dangerously and recklessly and fast. We do not think this evidence of any probative force. It is merely surmise and guess. The competent evidence as to the collision was the speed of the automobile at or about the time of the collision. The driving at other places is too remote. The cases of *Hicks v. Love,* 201 N. C., 773, and *Charnock v. Refrigerating Co.,* 202 N. C., 105, are not contrary. There are a great many circumstances to be considered as to prior speed. "If immediately before the collision," as in the *Hicks case, supra,* it is competent.

The judge of the general county court charged the jury: "Now, gentlemen of the jury, in order to establish actionable negligence, the plaintiff is required to satisfy you, first, that the defendant has failed to exercise due care in the performance of some legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, and, second, that such failure on the part of the defendant was the proximate cause of the collision. Due care is the care which a person of ordinary prudence should use under the same or similar circumstances when charged with a like duty; the failure to exercise due care when it becomes the proximate cause of a collision or injury, if such failure was negligence, then if it becomes the proximate cause of the collision, it becomes actionable negligence."

The court then gave a correct charge taken as a whole as to the meaning of proximate cause. This exception and assignment of error cannot be sustained. The court charged: "The law requires that every person operating an automobile on the public highways shall operate it in a manner which is prudent and reasonable under the circumstances and in the light of the attending circumstances, both as to speed and the manner of operation. Defendant owed the plaintiff the duty on this occasion to exercise due care in operating his automobile in a manner which was prudent and reasonable in the light of the attending circumstances. Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the

main traveled portion of the right of way as nearly as possible, so defendant owed the plaintiff the duty to drive its truck on the right-hand side of the road and to yield to the plaintiff at least one-half of the main traveled portion of the highway." The charge continues, giving the rule of law in road cases applicable to the facts in this case. Another exception and assignment of error was made to the charge which upon careful reading was in the nature of a contention. If inaccurate, the attention of the court should have been called to it. We see nothing prejudicial in the charge. In fact, in some 15 pages, to which no exception was taken, the court placed the burden of the issues properly, defined correctly greater weight of the evidence, negligence, contributory negligence and damage; giving the contentions *pro* and *con* of the litigants in a fair and impartial way.

The court did not impinge C. S., 564; it charged every substantial and essential feature of the case.

We have examined all the exceptions and assignments of error with care, and see no error.

In *Davis v. Long,* 189 N. C., 129 (137), it is written: "The case is not complicated as to the law or facts. The jurors are presumed to be men of 'good moral character and sufficient intelligence.' They could easily understand the law as applied to the facts. The jury has found all the issues in favor of plaintiff, and we find no error."

For the reasons given, the judgment of the court below is

Affirmed.

BARNHILL, J., dissents.