STATE OF NORTH CAROLINA v. HELEN LOUISE MARTIN PHILLIPS

No. 69

(Filed 9 May 1973)

1. Criminal Law § 38— evidence of prior acts — admissibility

Evidence of prior acts or declarations, to be admissible, must be related to and tend to shed light on the acts complained of.

2. Criminal Law §§ 80, 169— letter written by defendant — improper use by prosecution — prejudicial error

Where defendant addressed a letter to "the Director of Prisons" one year prior to the homicide with which she was charged asking for information on a day in the life of a woman serving time for manslaughter, as defendant was compiling information for a short story she was writing, the trial court committed error requiring a new trial in that it allowed the letter to be represented by the prosecution as an attempt by defendant to find out what would happen to her when she killed her husband and was convicted therefor.

Justices LAKE and BRANCH dissent.

APPEAL by defendant from Webb, S. J., August 21, 1972 Session, CALDWELL Superior Court. By order dated March 26, 1973, the appeal was docketed in the Supreme Court prior to review by the Court of Appeals.

The defendant, Helen Louise Martin Phillips, was indicted for the first degree murder of her husband, Garvey Willie Phillips. The evidence disclosed that the deceased and the defendant had been married for twenty-nine years. Their married life had not been harmonious. They had separated on at least three different occasions. The deceased was six feet tall and weighed two hundred pounds. He was addicted to drinking. The defendant had been under doctor's care for some time. She had a medical history of nervous tension and emotional instability. She kept a light in a window which she used at night

State v. Phillips

as a signal that she and her husband were having trouble. When the light flashed on it was a call for help.

At about 5 o'clock on the afternoon of February 23, 1972, a female voice called for an ambulance. The caller had difficulty in giving directions. However, through the telephone operator, the ambulance corps was able to locate the source of the call and went directly to the Phillips' home. When the crew entered the house, they found the defendant with a pistol in her hand standing in the floor. Her husband was lying on the floor of the living room, apparently unconscious. He was taken to the hospital where examination disclosed two bullet wounds from a pistol. When he revived, he was angry, belligerent and appeared to be intoxicated. He later died as a result of the wounds.

Captain Hagaman of the Lenoir Police Department followed the ambulance to the home, found the pistol on the floor of the living room, and Mrs. Phillips lying on the couch. Captain Hagaman testified: "[S]he was in a semi-conscious state. I did not get any response from Mrs. Phillips. . . . I called an ambulance for her to go to the hospital."

A daughter-in-law of the parties testified as a witness for the State and said that about eighteen months before the trial, approximately one year before the shooting, she typed a letter for the defendant which the defendant had written in longhand and brought to her for transcription. The State obtained the original letter from defense counsel by court order requiring its production. The letter was addressed to the Director of Prisons and is here quoted:

"Dear Sir:

I would like some information on a day in the life of a woman serving time for manslaughter.

I am compiling a outline on a story.

I want the woman to serve not more than two years, not less than one.

Do you place the woman in categories. Do they work in the sewing or laundry departments? What hours do they work? Are they paid any fee at all? How many to a cell block? And what are the visiting rights. Anything you could tell me would be very helpful.

I want this woman to be of good character. Also to be a model prisoner.

If this isn't asking too much of your time, I will be forever grateful.

Thank you very much

Mrs. Helen Phillips
116 Locust Drive
Lenoir, N. C."

On cross-examination the witness testified:

" . . . I typed a number of letters and stories for Mrs. Phillips. This is a short story of some 45 pages that she wrote and I typed it. She wrote a number of short stories and submitted those stories to magazines for publication. . . .

"Mrs. Phillips discussed her stories with me from time to time during the course of my doing the typing for her. I was generally familiar with the theme of the story when I discussed them with her.

" . . . When I wrote the letter she discussed with me about a story she anticipated writing and was gathering the proper background and details about a woman that was sent to prison."

When the letter was offered by the State and objected to by the defendant, it was admitted before the jury as State's Exhibit Eight. This was the basis of defendant's Exception No. 28 and is listed as Assignment of Error No. 1.

The defendant testified in her own defense. She detailed the difficulties she and her husband had had and instances of assaults and acts of violence. She testified that on the afternoon of February 23, 1972, he came home from the farm intoxicated and started a fuss, threatened and struck at her and pulled her hair. She was afraid of him. She picked up the garbage can under the pretense of taking it outside so she could leave the house, but he prevented her from going. He had threatened to go out and get the axe and use it on the television set. During the difficulty he ordered her to take the garbage can back in the kitchen. When she did, she noticed the pistol lying on the hot water heater by the kitchen door. When he went for the axe, she got the gun and took it back to the living room

and concealed it behind her leg. He came back without the axe, but still in a rage, struck at her but hit the back of her chair, then grabbed her hair and when he swung around, she shot. She did not know whether she fired one or more shots.

The defendant offered a number of witnesses who testified to her good character. She offered evidence that her husband was violent and dangerous when he was intoxicated.

The jury returned a verdict of guilty of voluntary manslaughter. From the court's judgment that the defendant serve from eight to ten years in the State's prison, she appealed.

*Robert Morgan, Attorney General by E. Thomas Maddox, Jr., Associate Attorney for the State.*

*West & Groome by H. Houston Groome, Jr. and Ted G. West for defendant appellant.*

HIGGINS, Justice.

Ordinarily when it becomes necessary to order a new trial on the ground the prosecution in a criminal case was permitted, over objection, to introduce incompetent and prejudicial evidence, this Court confines the discussion to the assignment of error which challenges the admissibility of the evidence. In this instance, Assignment of Error No. 1, based on Exception No. 28, challenged the admissibility of State's Exhibit Eight— the defendant's letter to the warden of the State's prison.

The State's witness who identified the letter stated on cross-examination it was written one year prior to the homicide. The witness was in the habit of transcribing stories which the defendant wrote for publication. She testified:

"... I typed a number of letters and stories for Mrs. Phillips.

"Mrs. Phillips discussed her stories with me. . . .

"When I wrote the letter she discussed with me about a story she anticipated writing and was gathering the proper background and details about a woman that was sent to prison."

The letter itself stated the writer wanted the information for a story. The witness at the time she typed the letter knew of the defendant's plans and preparations for the story.

In this case, not only the solicitor for the State and his staff, but privately employed counsel appeared for the prosecution. The defendant offered evidence, hence the State had the right to open and conclude the argument to the jury. After the argument, the court in reviewing the evidence, charged the jury:

> ". . . That on one occasion about eighteen months ago that the defendant in this case brought her a letter to be typed and that she typed the letter for the defendant. The letter was introduced into evidence and as I recall it but you take your own recollection of the letter, that it was to the Warden of the State Prison or some official in the State Department of Correction asking for information as to what *would happen to a woman that was in prison . . . serving a sentence for manslaughter.*" (Emphasis added.)

The court interpreted the letter "as asking for information as to what would happen to a woman that was in prison . . . serving a sentence for manslaughter."

Research has failed to disclose a court decision which is of much value as authority on the question before us. The cases deal largely with remoteness in time rather than with remoteness in purpose or mental attitude. With respect to remoteness in time, the rule is stated in 1 Wharton's Criminal Evidence, 13th Ed., § 152:

> "No rigid rule can be stated to determine when the time interval is so great that a given fact has no probative value. . . . Flexibility, then, is necessary in verbalizing a workable standard. . . . There being no fixed standard for determining remoteness, it is necessary to consider all the attendant circumstances, the nature of the evidence offered, and the nature of the crime."

[1] Evidence of prior acts or declarations, to be admissible must be related to and tend to shed light on the acts complained of. *State v. Kelly,* 227 N.C. 62, 40 S.E. 2d 454; *Barnes v. Teer,* 218 N.C. 122, 10 S.E. 2d 614.

The legitimate purpose of the defendant's letter is explained by the State's witness as well as by the letter itself. The purpose was to obtain information for use in a story.

[2] To those familiar with criminal trials, it is not difficult to visualize the prejudicial effect the private counsel for the

prosecution and the solicitor were able to generate by waving this letter before the jury and picturing it as an attempt on the part of this woman to find out what would happen to her when she executed her plan and thereafter was convicted of killing her husband. In the court's recapitulation of the State's evidence, the court characterized the letter as "asking for *information* as to what would happen to a woman that was in prison . . . serving a sentence for manslaughter." (Emphasis added.) The recapitulation magnified the error.

In view of the explanation the State's witness gave for the defendant's letter, none of which was contradicted in the evidence, the use the court permitted the State to make of it was so prejudicial the defendant is entitled to go before another jury.

The cause is remanded to the Superior Court of Caldwell County for a

New trial.

Justices LAKE and BRANCH dissent.